IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KANDICE HERNDON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 5:23-cv-917 |
| | § | |
| SASSTASS & THE POUR HORSE MOBILE | § | **JURY TRIAL DEMANDED** |
| BAR CO., LLC d/b/a THE POUR HORSE, | § | |
| MOBILE BAR CO. and d/b/a THE POUR | § | |
| HORSE CUSTOM BUILDS and | § | |
| TASSIE GRANTHAM | § | |
| | § | |
| Defendants. | § | |
| | § | |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Kandice Herndon ("Plaintiff" or "Herndon") files this Original Complaint against Defendants SassTass & The Pour Horse, Mobile Bar Co., LLC d/b/a The Pour Horse, Mobile Bar Co. and d/b/a The Pour Horse Custom Builds ("Pour Horse") and Tassie Grantham ("Grantham") (collectively, "Defendants"), and in support thereof alleges the following:

### NATURE OF ACTION

1. This is an action for breach of contract, violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.01 *et seq.*, fraud, negligent misrepresentation, and unjust enrichment, all under Texas law, in which Plaintiff seeks monetary damages and attorney's fees.

### PARTIES

2. Plaintiff Kandice Herndon is an individual residing in Baton Rouge, Louisiana.

3. Defendant Pour Horse is a limited liability company organized under the laws of the State of Texas and is doing business under the trade names The Pour Horse, Mobile Bar Co. and The Pour Horse Custom Builds. Upon information and belief, Defendant Pour Horse has a principal place of business located at 1334 S. General McMullen Blvd, Building 3, San Antonio, Texas 78237. Defendant Pour Horse may be served by serving its registered agent Legalinc Corporate Services, Inc. at 10601 Clarence Dr., Ste. 250, Frisco, Texas 75033, or alternatively, may also be served by serving its principal, Tassie Grantham, at 16418 Ledge Rock St., San Antonio, Texas 78232 or wherever she may be found.

4. Defendant Tassie Grantham is an individual residing in Texas and may be served at 16418 Ledge Rock St., San Antonio, Texas 78232 or wherever she may be found.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction over Herndon's claims in that Herndon and the Defendants are citizens of different states, and the amount in controversy, exclusive of interests and costs, exceeds the sum or value of seventy-five thousand dollars ($75,000.00).

6. This Court has personal jurisdiction over the Defendants because the Defendants reside in and conduct business in Texas.

7. Venue is proper in this District under 28 U.S.C. § 1391 because all Defendants reside in or are located within this judicial district and all or a substantial part of the events giving rise to the claims herein occurred and continue to occur in this judicial district.

## FACTS

8. Mobile bars, which are similar to food trucks, are vehicles specifically outfitted for serving alcoholic beverages. Mobile bars are usually rented for use at weddings or other events. The mobile bar rental industry has grown in popularity over the last several years.

9. In 2021, Herndon was living in San Antonio, Texas with plans of moving to the State of Louisiana. Herndon noticed there was a lack of mobile bar rental businesses in Louisiana, as compared to Texas, and decided to start her own mobile bar rental company in Louisiana.

10. Pour Horse sells custom mobile bars made out of repurposed vehicles. The mobile bars are specifically designed and built for each client to use in the client's mobile bar rental business. In addition to designing and building mobile bars, Pour Horse also provides its clients with networking, marketing, and branding services, pricing guides, and contracts to help the client set up and promote its rental business. Pour Horse also appears at clients' first rental event to help clients with workflow and learning the trailer. Pour Horse promises to build and sell mobile bars to no more than two clients per metropolitan area to avoid over competition in a given market. Pour Horse promotes its mobile bar build and business start-up services on its website at www.thepourhorse.com/barbuilds and Instagram page at https://www.instagram.com/the_pour_horse. The representations made on Pour Horse's website and Instagram page indicate that its clients will or are likely to earn a profit in excess of the money paid for Pour Horse's services. **Exhibit A** is true and correct printout of Pour Horse's website at www.thepourhorse.com/barbuilds, and **Exhibit B** are true and correct printouts from Pour Horse's Instagram page at https://www.instagram.com/the_pour_horse.

11. Based on information and belief, Pour Horse also provides mobile bar rental services in and around San Antonio, Texas.

12. Grantham is the managing member of Pour Horse.

13. While researching mobile bar sellers, Herndon came across Pour Horse's website and Instagram profile. See **Exhibit A** and **Exhibit B**.

14. On August 9, 2021, Herndon contacted Pour Horse via email expressing an interest in engaging Pour Horse to design and build a mobile bar for Herndon to start a rental business in New Orleans, Louisiana.

15. Grantham responded to the email the same day and provided Herndon with a list of different types of builds with lead times and pricing. Grantham stated that in addition to the custom build, Pour Horse also provides full guidance to its client to help the client "hit the ground running" on their rental business. Grantham also stated that the next available build start date was April 2022. Over the next couple of days, Grantham and Herndon corresponded back and forth about the mobile bar and pricing.

16. On or around August 13, 2021, Herndon received a copy of the contract with Pour Horse. The following day, Herndon executed and returned the contract. **Exhibit C** is a true and copy of the contract.

17. In Section 1.1 of the contract, Pour Horse agreed to design and build a mobile bar for Herndon using a two-horse trailer. Pour Horse also agreed in Section 1.1 of the contract to provide business start-up services, namely, a pricing guide, client contracts, and up to six months of marketing, branding, networking advice and guidance, all of which would start two months prior to the build start date. Section 1.2 of the contract states that the build start date was estimated to begin no later than May 15, 2022.

18. In exchange for Pour Horse's services, Herndon agreed in Section 1.3 of the contract to pay $29,227.50 according to the following schedule: $9,742.50 initial retainer to be

paid immediately to secure Pour Horse's services; $9,742.50 upon successful completion of 50% of the total scope of the project but no later than June 30, 2022; and the remaining balance upon successful completion of the project.

19.     Section 4 of the contract provides that either party can terminate the contract at any time, and in the event the contract is terminated before completion of the build, Herndon is only responsible for payment of work and costs incurred up until the date of termination.

20.     Based on the representations made on Pour Horse's website and Instagram account, and in the contract sent by Pour Horse, as well as the representations made by Grantham in her email communications to Herndon, Herndon reasonably believed that Pour Horse would start building Herndon's mobile bar by May 15, 2022, and that the build would be around 50% complete by June 30, 2022. Herndon also reasonably believed, based on Defendants' representations, that Pour Horse would begin providing the business start-up services around March 15, 2022 (*i.e.*, two months prior to the start date).

21.     Herndon paid the $9,742.50 retainer required under the contract on August 21, 2021. **Exhibit D** consists of true and correct copies of payment history showing payments made by Herndon to Pour Horse.

22.     On March 4, 2022, Herndon emailed Grantham to check on the status of the project. In response, Grantham stated that Herndon was on the schedule and "[w]e will be [in] contact soon to get the design finalized." However, no one from Pour Horse contacted Herndon.

23.     On June 20, 2022, Herndon again emailed Grantham to check on the status of the project. In response, Grantham stated they were "a little behind" and that they "should be starting in 6–8 weeks."

24.     Based on Defendants' representations that the build would start soon, Herndon purchased the website domain address www.magnoliamixer.com for her mobile bar rental business and hired an attorney to form the entity Magnolia Mixer Mobile Bar, LLC. Herndon also paid a third party to design the following logo for Herndon's mobile bar rental business:



25.     On or around August 9, 2022, Pour Horse sent Herndon an invoice for $19,874.70 (*i.e.*, the remainder of the payments). Based on Grantham's representations that Herndon's project would start by mid-August, Herndon paid Pour Horse the $19,874.70 on August 9, 2022. See **Exhibit D**.

26.     Pour Horse did not send Herndon any mobile bar designs to review, did not start building Herndon's mobile bar, and did not provide business start-up services or any other services to Herndon in August of 2022.

27.     On September 8, 2022, Herndon emailed Grantham again asking for the expected start date of her project. In response, Grantham stated that Herndon's project is "in the next round," that Grantham had "a general rendering almost complete," and asked for Herndon's phone number so that Grantham could text Herndon the mobile bar design rendering once it was complete. After Herndon sent Grantham her cell number, Grantham responded with "I'll get rendering together." Pour Horse also inexplicably sent Herndon another invoice for $794.00, which Herndon paid the

same day based on Grantham's representations that the design renderings would be sent to Herndon soon and the project would start thereafter. See **Exhibit D**. However, a design rendering was never sent to Herndon and no work or other services were provided by Pour Horse.

28. On November 15, 2022, after receiving no design renderings or any other services from Pour Horse, and after more than six months of misrepresentations that the project would start in the near future, Herndon provided Grantham with notice that she was cancelling the contract with Pour Horse and demanded a full refund of all money paid to Pour Horse.

29. In response, Grantham refused to refund Herndon's payments. Grantham also stated that she will have a "cancellation agreement drawn up by our lawyer[']s office and send it to you promptly." However, to this date, Herndon has not received any cancellation agreements from Pour Horse, and Grantham has ignored Herndon's subsequent requests for a refund. **Exhibit E** consists of two letters sent by Plaintiff's counsel to Defendants demanding a refund.

30. Pour Horse materially breached the contract with Herndon when it did not start the build project by May 15, 2022, or within a reasonable time thereafter. Pour Horse also materially breached the contract by receiving $30,412 from Herndon and not providing any goods or services under the contract and refusing to refund the $30,412 when Herndon terminated the contract.

31. As a result of Defendants numerous material misrepresentations regarding the start of the project, and Defendants' refusal to refund the $30,412 despite rendering no services under the contract, Herndon was forced to forego her plans of opening a mobile bar rental business, lost out on profits that would have been generated by said business, and accrued significant debt. Moreover, Herndon suffered severe emotional distress as a result of Defendants' actions. Herndon was forced to forego her business plan and accrued debt. Herndon has expended additional resources on professional counseling to deal with her severe emotional distress.

## COUNT 1
## BREACH OF CONTRACT

32. The allegations set forth in the above paragraphs are incorporated by reference and fully set forth herein.

33. Plaintiff and Defendant Pour Horse entered into an written contract on August 13, 2021.

34. Under the terms of the contract, Pour Horse agreed to design and build a mobile bar for Plaintiff, which it would start building by May 15, 2022, and provide up to six months of business start-up services to Plaintiff. In exchange for Pour Horse's services, Plaintiff agreed to pay Pour Horse $29,227.50.

35. Plaintiff paid a total of $30,412 to Pour Horse.

36. Pour Horse did not start building Plaintiff's mobile bar by May 15, 2022, or within a reasonable thereafter, and did not provide any services due under the contract.

37. Plaintiff terminated the contract on November 15, 2022 and asked for a refund. Defendants refused, and continue to refuse, to refund Plaintiff the $30,412.

38. As a result of the breach of contract by Defendant Pour Horse, Plaintiff has sustained, and continues to sustain, damages in an amount to be determined at trial, but not less than the $30,412 Plaintiff paid to Pour Horse.

39. As a foreseeable result of Defendant Pour Horse's failure to perform as promised, Plaintiff sustained other losses that were within the contemplation of the parties when the contract was made because Plaintiff was prevented from starting her mobile rental business and lost profits that would have been generated by said business. Plaintiff also expended resources setting up her mobile bar rental business, including purchasing a website domain address, forming Magnolia Mixer Mobile Bar, LLC, and logo design services.

40. As a result of Defendant Pour Horse's breach of the contract, it was necessary for Plaintiff to retain counsel and incur legal expenses. Therefore, Plaintiff seeks recovery from Defendant Pour Horse for the costs and reasonable attorney's fees as permitted by Texas Civil Practice and Remedies Code § 38.001(8). Proper demand was made to Defendant Pour Horse and Defendant Pour Horse failed to tender payment within 30 days of being presented with the demand. See **Exhibit E**.

## COUNT 2
## DECEPTIVE TRADE PRACTICES ACT ("DTPA")

41. The allegations set forth in the above paragraphs are incorporated by reference and fully set forth herein.

42. Plaintiff is a consumer as defined by Tex. Bus. & Com. Code § 17.45(4).

43. Defendants committed a false, misleading, or deceptive act or practice under Tex. Bus. & Com. Code §17.46(b)(5) by misrepresenting to Plaintiff that the services would start within a reasonable time with the intent to induce Plaintiff to give Defendants money and this misrepresentation was relied on by Plaintiff to her detriment.

44. Defendants committed a false, misleading, or deceptive act or practice under Tex. Bus. & Com. Code §17.46(b)(7) by misrepresenting that the services would be performed in a reasonable time, or that the services would be performed at all, and Plaintiff relied on these misrepresentations to her detriment.

45. Defendants committed a false, misleading, or deceptive act or practice under Tex. Bus. & Com. Code §17.46(b)(12) by misrepresenting to Plaintiff that the entire payment was due under the contract when it was not, and for demanding payment of $794.00 over the contract price, and Plaintiff relied on these misrepresentations to her detriment.

46. Plaintiff had no experience in the mobile bar industry or in starting her own business. Defendants have extensive experience in the mobile bar rental industry and building mobile bars for third parties to start their mobile bar business. Defendants committed an unconscionable act under Tex. Bus. & Com. Code §17.45(5) by taking advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree and that resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated.

47. Defendants are sellers of business opportunities under the Texas Business Opportunities Act ("BOA"), Tex. Bus. & Com. Code § 51.001 *et seq.* Defendants did not provide Plaintiff with a written disclosure statement containing the information required by the BOA prior to Plaintiff signing the agreement with Pour Horse. Based on information and belief, Defendants have not registered the business opportunity with the Texas Secretary of State or established a trust account, obtained a surety bond, or obtained an irrevocable letter of credit as required by the BOA. Defendants represented to Plaintiff that the business opportunity will provide income or earning potential and did not provide or disclose documented data to substantiate this representation to Plaintiff, which is prohibited under the BOA. Defendants made misrepresentations of material fact by representing they would provide mobile bar design services, mobile bar build services, and businesses start-up services, and never provided those services, which is prohibited under the BOA. Defendants' conduct in violating the BOA is a false, misleading, deceptive act or trade practice under Tex. Bus. & Com. Code & Com. Code § 17.46(b).

48. Plaintiff relied on Defendants' misrepresentations to her detriment.

49. The deceptive trade practices conducted by Defendants are the producing causes of Plaintiff's damages including the loss of $30,412, lost business opportunity, lost profits, and mental anguish damages.

50. Based on information and belief, Defendants made intentional and knowing violations of the DTPA by making false, misleading, and deceptive representations concerning the project start time and amount due under the contract, and Defendants made intentional and knowing violations of the BOA, which entitles Plaintiff to up to three times the amount of her damages under the DTPA.

51. As a result of Defendants violations of the DTPA and BOA, it was necessary for Plaintiff to retain counsel and incur legal expenses. Therefore, Plaintiff seeks recovery from Defendants for the costs and reasonable attorney's fees as permitted by the DTPA. Proper written notice was given to Defendants at least 60 days before the filing of this lawsuit. See **Exhibit E**.

## COUNT 3
## FRUAD

52. The allegations set forth in the above paragraphs are incorporated by reference and fully set forth herein.

53. Defendants represented to Plaintiff that in exchange for money, Defendants would build a custom mobile bar and provide business start-up services. On several occasions, Defendants represented to Plaintiff that Defendants would start building the mobile bar in the near future.

54. The representations are material because a reasonable person would attach importance to and would be induced to act on the representations, and Plaintiff did in fact act on the representations.

55. The representations were false because Defendants never started building the mobile bar and no services were ever provided.

56. Defendants' egregious conduct indicates that Defendants knew the representations were false or made it recklessly without any knowledge of their truth and they were made as positive assertions.

57. Defendants made the representations with the intent that the representations be acted on by Plaintiff. More specifically, Defendants made their representations to induce Plaintiff to pay money to the Defendants.

58. Plaintiff acted in reliance on the representations and paid money to the Defendants.

59. Plaintiff has been injured by Defendants' actions, including Defendants' refusal to refund the money paid by Plaintiff to Defendants.

## COUNT 4
## NEGLIGENT MISREPRESENTATION

60. The allegations set forth in the above paragraphs are incorporated by reference and fully set forth herein.

61. Defendants made misrepresentations to Plaintiff in the course of Defendant's business, and in a transaction in which Defendants had an interest, that Defendants would build a custom mobile bar and provide business start-up services, and that Defendants would start building the mobile bar in the near future.

62. Defendants did not exercise reasonable care of competence in obtaining or communicating the information.

63. Plaintiff justifiably acted in reliance on the representations and paid money to the Defendants.

64. Defendants' negligent misrepresentation proximately caused Plaintiff's injuries because no services were ever provided and Defendants refuse to refund the money Plaintiff paid to Defendants.

## COUNT 5
## UNJUST ENRICHMENT–MONEY HAD AND RECEIVED

65. The allegations set forth in the above paragraphs are incorporated by reference and fully set forth herein.

66. Plaintiff paid Defendants $30,412 for Defendants to build a mobile bar and provide business start-up services.

67. Defendants did not build a mobile bar or provide any services to Plaintiff.

68. Defendants obtained the benefit of receiving $30,412 without providing any goods or services under the contract. The $30,412 in equity and good conscience belongs to Plaintiff. Defendants obtained $30,412 from Plaintiff by undue advantage and fraud.

69. Based upon fundamental principles of justice, equity, and good conscience, Plaintiff's seek actual damages in an amount to be determined at trial, but not less than $30,412.

## CONDITIONS PRECEDENT

Plaintiff avers that all conditions precedent to its right of recovery have occurred or have been performed.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable to a jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that after hearing the evidence, the Court enter a judgment as follows:

a. Award Plaintiff Herndon economic and actual damages for Defendant Pour Horse's breach of the contract;

b. Award Plaintiff Herndon economic and actual damages for Defendants' violation of the DTPA;

c. Finding the Defendants' conduct knowing and intentional and awarding Plaintiff Herndon mental anguish damages;

d. Finding the Defendants' conduct knowing and intentional and awarding Plaintiff Herndon additional damages as allowed by Tex. Bus. & Com. Code § 17.50(b)(1) and § 17.50(h).

c. Defendants be ordered to pay Plaintiffs' attorneys' fees, together with costs;

d. Prejudgment and post judgment interest at the highest rate allowed by law; and

e. For such other and further relief, at law or in equity, as the Court deems proper under the circumstances.

Date: July 24, 2023

Respectfully submitted,

By: */s/* Julie P. Bell_____
Nick Guinn
Texas Bar No. 24087642
nick@gunn-lee.com
Julie P. Bell
Texas Bar No. 24116091
jbell@gunn-lee.com
GUNN, LEE & CAVE, P.C.
Callaghan Tower
8023 Vantage Dr., Suite 1500
San Antonio, Texas 78230
Telephone: (210) 886-9500
Facsimile: (210) 886-9883

**ATTORNEYS FOR PLAINTIFF**